UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMILY JANE WINSLOW,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A BERRYHILL, Acting Commissioner of Social Security,[1]<br><br>Defendant. | Case No. CV 16-07309-KES<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff Emily Jane Winslow ("Plaintiff") appeals the final decision of the Social Security Commissioner ("ALJ") denying her application for Disability Insurance Benefits ("DIB"). For the reasons discussed below, the Commissioner's decision is AFFIRMED.

## I.
## BACKGROUND

Plaintiff filed her disability claim application on December 16, 2011, alleging an onset disability date of April 1, 2011. Administrative Record ("AR") 140-43.

---

[1] On January 23, 2017, Berryhill became the Acting Social Security Commissioner. Thus, she is automatically substituted as defendant under Federal Rule of Civil Procedure 25(d).

The Commissioner denied the claims initially and on reconsideration in June 2012 and March 2013, respectively, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 58-81, 92-93. An ALJ conducted a hearing on April 24, 2014, at which Plaintiff, who was represented by an attorney, appeared and testified. AR 36-57. The ALJ issued an unfavorable decision on December 22, 2014. AR 20-30.

The ALJ found that Plaintiff suffers from the severe impairments of anxiety, bipolar disorder, post-traumatic stress disorder ("PTSD"), history of alcohol dependence in remission, and "left lower lobe infiltrate."[2] AR 22. Despite these impairments, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform work at all exertional levels but with the following non-exertional limitations: "the claimant can understand, remember and carry out two-step commands involving simple instructions, and would be able to maintain concentration, persistence, and pace to carry out those instructions." AR 24.

Based on this RFC and the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could not perform her past relevant work as a sales service promoter.[3] AR 29. Plaintiff could, however, work as a basket filler, garment bagger, or rack loader. AR 30. The ALJ therefore concluded that Plaintiff was not disabled. Id.

---

[2] "A lower lobe infiltrate is a medical situation where an X-ray of the lungs shows a gray shadow on either the left or right lower lobe of the lung. The shadow can be several things, including a buildup of fluid or a bacterial infection." See https://www.reference.com/health/lower-lobe-infiltrate-9233c3c72f1ef7fb. In the instant appeal, Plaintiff does not attribute any functional limitations to this condition.

[3] Plaintiff ran her own business planning and staffing product demonstrations at supermarkets. AR 40-41. She last worked in 2011. Id.

# II.

# STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

"A decision of the ALJ will not be reversed for errors that are harmless." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Generally, an error is harmless if it either "occurred during a procedure or step the ALJ was not required to perform," or if it "was inconsequential to the ultimate nondisability determination." Stout v. Comm'r of SSA, 454 F.3d 1050, 1055 (9th Cir. 2006).

**A.    The Evaluation of Disability.**

A person is "disabled" for purposes of receiving Social Security benefits if he is unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A);

Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). A claimant for disability benefits bears the burden of producing evidence to demonstrate that he was disabled within the relevant time period. Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995).

**B.     The Five-Step Evaluation Process.**

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Lester v. Chater, 81 F.3d 821, 828 n. 5 (9th Cir. 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of not disabled is made and the claim must be denied. Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity to perform his past work; if so, the claimant is not disabled and the claim must be denied. Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The claimant has the burden of proving he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If

the claimant meets that burden, a prima facie case of disability is established. Id.

If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because he can perform other substantial gainful work available in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That determination comprises the fifth and final step in the sequential analysis. Id. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

## III.
## ISSUE PRESENTED

Plaintiff's appeal presents the sole issue of whether the ALJ properly evaluated the medical opinions of Tracy Burrell, Ph.D., and Salvador Arella, M.D. Dkt. 27, Joint Stipulation ("JS") at 4.

Dr. Burrell, Plaintiff's treating psychologist since August 20, 2012, completed two Mental Disorder Questionnaire Forms ("MDQ Forms"), one indicating January 14, 2013, as the date of last examination (AR 309-13) and the second indicating February 18, 2013, as the date of last examination (AR 298-302).[4]

Dr. Burrell provided multiple opinions that Plaintiff's mental disorders severely limit her ability to carry out instructions, daily activities, and social interactions. For example, Dr. Burrell opined that Plaintiff "has repeated episodes of depression and PTSD that render her unable to function in her day-to-day life" (AR 298), Plaintiff has "poor concentration and follow through" (AR 299), Plaintiff has "limited social interactions," "explosive anger management issues," and "difficulty with self-care," and Plaintiff's "delusions prevent her from working as

---

[4] Dr. Burrell's February MDQ Form answers (AR 298-302) appear to have been written on a photocopy of the filled-out January MDQ Form (AR 309-13), adding information under many of the questions.

5

she believes she will eventually work with famous directors." AR 300. Plaintiff has a bachelor's degree in "critical study film/television" from the University of Southern California. AR 39.

Dr. Arella, Plaintiff's treating psychiatrist since April 12, 2013, completed an Evaluation Form for Mental Disorders ("EMD Form") dated April 9, 2014. AR 372-376. Dr. Arella opined that Plaintiff "cannot cope with stress; confused" (AR 373), "needs assistance to maintain residence" (id.), and "cannot work an 8-hour schedule." AR 374. He opined that Plaintiff had "marked" functional limitations conducting activities of daily living, functioning socially, and maintaining concentration, persistence or pace.[5] AR 375. He reported that within a one-year period, Plaintiff suffered three episodes of decompensation, each lasting at least two weeks.[6] Id. He indicated that Plaintiff has a "current history of one or more years' inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement." AR 376. Finally, Dr. Arella opined that Plaintiff would miss more than four days of work each month. Id.

The ALJ rejected the opinions of Drs. Burrell and Arella expressed in these forms. AR 27-28.

---

[5] The EMD Form defined "marked" as "more than moderate but less than severe. A marked limitation may arise when several activities or functions are impaired or even when only one is impaired so long as the degree of limitation is such as to seriously interfere with the ability to function independently, appropriately, effectively, and on a sustained basis." AR 375.

[6] The EMD Form defined "episodes of decompensation" as "exacerbations or temporary increases in symptoms of signs accompanied by a loss of adaptive functioning, as manifested difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence or pace. Episodes of decompensation may be demonstrated by an exacerbation of symptoms or signs that would ordinarily require increased treatment or less stressful situation." AR 375.

# IV.
# DISCUSSION

**A.     The Treating Physician Rule.**

"As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Turner v. Comm'r of SSA, 613 F.3d 1217, 1222 (9th Cir. 2010) (citation omitted). This rule, however, is not absolute. Where the treating physician's opinion is not contradicted by an examining physician, that opinion may be rejected only for "clear and convincing reasons." Tackett v. Apfel, 180 F.3d 1094, 1102 (9th Cir. 1999). Where, however, the opinions of the treating and examining physicians conflict, if the ALJ wishes to disregard the opinion of the treating physician, the ALJ must give "specific, legitimate reasons for doing so that are based on substantial evidence in the record." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citation omitted); see also Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) ("If the ALJ wishes to disregard the opinion of the treating physician, he or she must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." (citation omitted)).

Because the opinions of Drs. Burrell and Arella are contradicted by the findings of three consultative examiners, as discussed below, under Andrews and Orn, the dispositive question is whether the ALJ gave "specific, legitimate reasons" for discounting Drs. Burrell and Arella's opinions.

**B.     The ALJ Gave Specific and Legitimate Reasons Supported by Substantial Evidence for Discrediting Drs. Burrell and Arella's Opinions.**

The ALJ gave the same five reasons for rejecting the opinions of Drs. Burrell and Arella; their opinions were inconsistent with:

(1) the consultative examinations;

(2) the Department of Developmental Services ("DDS") assessments;

7

1          (3) Plaintiff's activities;

2          (4) both doctors' own treatment notes; and

3          (5) Plaintiff's conservative treatment.

AR 27-28.

**1.   <u>Reason One</u>: Inconsistency with Other Medical Evidence.**

Generally, the more consistent a medical opinion is with the record as a whole, the more weight that medical opinion should receive. 20 C.F.R. § 416.927(c)(4). ALJs may reject treating source medical opinions that are unsupported or inconsistent with other treating or examining source evidence. <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1041 (9th Cir. 2008) (holding ALJ properly rejected physician's opinion that was inconsistent with record); <u>Rollins v. Massanari</u>, 261 F.3d 853, 856 (2001) (holding ALJ properly rejected treating physician's opinions that "were so extreme as to be implausible and were not supported by any findings made by any doctor"). An examining physician's opinion alone constitutes substantial evidence in support of an ALJ's decision because it rests on an independent examination of the claimant. <u>See, e.g.</u>, <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001); <u>Batson v. Comm'r of SSA</u>, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ properly discounted opinions of two treating doctors "because of their conflict with the results of a consultative medical evaluation" that showed improvement in claimant's back following surgery).

Here, psychiatrist Dr. Shoemaker completed a psychiatric evaluation of Plaintiff dated May 8, 2012. AR 287-93. Dr. Shoemaker opined that Plaintiff would have only "mild" difficulty following simple instructions, maintaining concentration and attendance, and performing activities within a scheduled amount of time. AR 292. He observed Plaintiff to be tense and anxious, but he did not observe her to have "delusions" or "thought disorganization." AR 291, 293. Plaintiff functioned well on the testing he administered. AR 293.

Psychiatrist Stephen Erhart also completed a psychiatric evaluation of Plaintiff dated February 2, 2013. AR 336-42. Dr. Erhart opined that Plaintiff's daily activities were "intact." AR 341. He noted that Plaintiff lives in her mother's house with her mother and three of her five children, the youngest of whom was 15 at the time. AR 336, 339. Plaintiff told Dr. Erhart that she had been able to "sequester" her difficulties from her children and they were "unaware" of her mental impairments. AR 339. While she presented herself to Dr. Erhart in a volatile way that was alternatively theatrical and frustrated, she obtained a nearly perfect score on a cognitive assessment exam. AR 340. Dr. Erhart opined that Plaintiff could perform simple or complex tasks and respond to workplace changes, but she was moderately impaired dealing with workplace pressures and interacting with others. AR 341.

Finally, psychologist Bahareh Talei evaluated Plaintiff in August 2014. AR 381-83. Dr. Talei opined that Plaintiff had no difficulty with simple instructions. AR 381. Dr. Talei also opined that Plaintiff was only "mildly" limited interacting with others and responding to usual work situations and changes. AR 382.

While Dr. Burrell found that Plaintiff had "difficulty following instructions" and was often "confused," Dr. Talei opined that Plaintiff had no difficulty with simple instructions, while Dr. Shoemaker opined that Plaintiff had only "mild" difficulty following simple instructions, and Dr. Erhart opined that Plaintiff could perform simple or complex tasks. Compare AR 292, 301 and AR 341, 381. While Dr. Burrell found that Plaintiff had "poor" and "limited" social interactions, Dr. Erhart noted that Plaintiff was living with family members and raising her two youngest children who were unaware of her difficulties. Compare AR 301 and AR 336, 339. While Dr. Burrell opined that Plaintiff suffered from "repeated episodes" that rendered her "unable to function in her day-to-day life," Dr. Erhart opined that Plaintiff's daily activities were "intact." Compare AR 298 and AR 341.

Regarding social interactions and activities of daily living, Dr. Arella opined

Plaintiff was "markedly" impaired. AR 375. In contrast, the consultative examiners found Plaintiff's social functioning only mildly or moderately impaired. AR 292, 341, 381-82. They found Plaintiff's activities of daily living either unimpaired or only mildly impaired. Id.

Thus, all three of the consultative examiners opined that Plaintiff's mental disorders impaired her functional abilities far less drastically than did Drs. Burrell and Arella. These evaluations were based on the consultative doctors' personal observations and objective testing. Compare AR 293 (Plaintiff "was able to function well on testing" by Dr. Shoemaker), AR 340 (Dr. Erhart administered Montreal Cognitive Assessment test) and AR 299, 310 (Dr. Burrell reports "no tests administered"). The ALJ appropriately cited the inconsistency between the three consultative examiners' opinions and Drs. Burrell and Arella's opinions as a reason to discount Drs. Burrell and Arella's opinions.

### 2. **Reason Two: Inconsistency with the DDS Assessments.**

The Ninth Circuit has recognized that "[t]he opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." Thomas v. Barnhart, 278 F.3d 948, 957 (9th Cir. 2002); see also Social Security Ruling ("SSR") 96-6p ("State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act.").

Here, state agency examiner psychologist Robert Liss determined that Plaintiff suffers from anxiety disorder. AR 61. He opined Plaintiff had only mild limitations in conducting activities of daily living and maintaining social functioning. AR 62. He further opined that Plaintiff was "not significantly limited" in carrying out very short and simple instructions. AR 63. He opined that Plaintiff was not significantly limited in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary

10

tolerances. AR 63-64. He concluded, "Claimant's anxiety causes maintenance of [concentration, persistence, and pace] to depend upon restriction of task complexity." AR 64. State agency examiner psychologist Phaedra Caruso-Radin determined that Dr. Liss's "prior decision remains reasonable and is affirmed." AR 74.

Thus, the state agency examiners' opinions were consistent with those of the consultative examiners, but very different from Dr. Burrell's opinion that Plaintiff's episodes of depression and PTSD render her unable to function in daily life and Dr. Arella's opinions that Plaintiff has marked limitations in all major functional areas. In weighing the conflicting medical evidence, the ALJ did not err in citing inconsistency with the agency examiners' opinions as a reason to discount the opinions of Drs. Burrell and Arella.

### 3. <u>Reason Three: Inconsistent with Plaintiff's Activities.</u>

ALJs may reject medical opinions that are inconsistent with other evidence of record, such as the claimant's activities. <u>Morgan v. Comm'r of SSA</u>, 169 F.3d 595, 601 (9th Cir. 1999); <u>see</u> <u>also</u> <u>Fisher v. Astrue</u>, 429 F. App'x 649, 652 (9th Cir. 2011) (concluding that conflict between doctor's opinion and claimant's daily activities was legally sound reason to discount doctor's opinion); <u>Rivera v. Colvin</u>, No. 13-160, 2013 WL 3879722, at *7 (C.D. Cal. July 26, 2013) (upholding ALJ's rejection of medical opinion that plaintiff could do no lifting at all, where plaintiff testified that he could lift "[m]aybe five pounds, maybe a little less.").

The ALJ noted Plaintiff's activities as follows: "the claimant can drive a car, watch television, read, and play computer games. She testified that she went to the health club, swam a quarter mile a day, and vacuumed." AR 23, citing AR 208-16 (Adult Function Report completed by Plaintiff's Alcoholics Anonymous ["AA"] sponsor, Ann Tesar). Plaintiff attends AA meetings three times a week and also church. AR 23. She also exercises on a Stairmaster, goes to the food bank twice a week, and goes to doctor's appointments for herself and her son. AR 25, citing AR

45-46. During her period of claimed disability, Plaintiff interviewed with four employment agencies. AR 26, citing AR 222. In 2013, Plaintiff made a film that was entered in a film festival. AR 25, citing AR 48. She also acted in a play. AR 25; see AR 339 (in February 2013, she told Dr. Erhart that she was "in negotiations to begin work in an amateur theater production"), AR 356 (in February 2013, Plaintiff told Dr. Burrell "she is in a play"). The ALJ found that collectively, these activities "show [Plaintiff] is far more mentally capable than she alleged." Id.

These activities do reflect mental abilities consistent with carrying out basic work-related tasks, such as paying attention, completing chores, maintaining a schedule, following instructions, and interacting with others. Thus, the ALJ's third reason for discounting the very restrictive opinions of Drs. Burrell and Arella is also supported by substantial evidence.

Plaintiff does not contend that the ALJ cited any activities in which Plaintiff does not engage. Instead, Plaintiff argues that the ALJ should have given more weight to Plaintiff's own function report, as follows:

> On a function report on January 26, 2013, [Plaintiff] reported that she does not go anywhere; has explosive anger; cannot be around strangers; cannot concentrate; stays at home as much as possible; wears same clothes every day; skips from bathing; among others.

JS at 10, citing AR 218-228.

The ALJ disbelieved Plaintiff's testimony concerning the limiting effect of her mental impairments. AR 25. Plaintiff has not challenged that adverse credibility determination in this appeal. In any event, ample evidence in the record contradicts Plaintiff's above-quoted self-determined limitations. Drs. Shoemaker and Erhart observed that Plaintiff came to her appointments appropriately dressed and with adequate hygiene. AR 287, 340; see also AR 335 (describing Plaintiff as "well-groomed"); AR 51 (Plaintiff showers regularly at the YMCA). Plaintiff acknowledged that she leaves home for a variety of reasons every week, such as

going to the YMCA, the grocery store, AA meetings, church, and the food bank.

Lastly, Plaintiff argues that the ALJ overstated Plaintiff's activities, because he should have doubted the veracity of Plaintiff's reports that she made a film, acted in a play, and took a film school course. JS at 12. Plaintiff reported these activities to several different doctors and testified about them under oath at the hearing. They are consistent with Plaintiff's educational background. Even now, Plaintiff does not claim in the Joint Stipulation that she did not engage in these activities – she claims only that her participation is "ambiguous" because Dr. Burrell opined that she has "delusions" of working with famous directors. JS at 11-12, citing AR 300. Plaintiff has not identified any ambiguity in the record sufficient to trigger the ALJ's duty to develop the record further. To the contrary, Plaintiff rationally explained at the hearing that while she had sent Oliver Stone a message via Facebook and subsequently met him, she recognized "there's no work there really" for her. AR 49. Plaintiff provided this testimony and testimony about the film she entered in a festival in response to questions from her own attorney. AR 48-49.

### 4. **Reason Four: Internal Inconsistency.**

The ALJ may disregard a treating physician's opinion when it is internally inconsistent. Johnson, 60 F.3d at 1432-33; Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992) (concluding that internal inconsistencies and ambiguities within doctor's opinion provided specific and legitimate reasons for ALJ to reject opinion).

    a. Dr. Burrell.

Regarding internal inconsistency in Dr. Burrell's records, the ALJ found as follows:

> Dr. Burrell's opinion completed sometime on or after February 18, 2013 and before February 25, 2013 (Exhibit 3F/3-7 [AR 298-02], 6F [AR 345-56]) differed substantially from her January 2013 opinion

(Exhibit 4F/3-7 [AR 309-13]). However, the progress notes during that short period of time (between January 2013 and some time in February 2013), as noted above, do not show a sharp decline in mental functioning. Moreover, Dr. Burrell noted that the claimant had good memory/concentration. Therefore, Dr. Burrell's opinions are not consistent with each other and are not consistent with Dr. Burrell's own progress notes.

AR 28.

The ALJ correctly observed that Dr. Burrell completed MDQ Forms in January and February 2013. The February MDQ Form is a photocopy of the January MDQ Form with substantial additions and some corrections. For example, the January MDQ Form noted psychiatric hospitalization was "not applicable," but the February MDQ Form says, "Pt reports being hospitalized for bulimia in 1982." Compare AR 309, 298. The January MDQ Form says, "Good memory/concentration, appears intelligent – perceptual disturbances; no tests administered," but the February MDQ Form adds to that response, "forgets appointments, poor concentration and follow through, tangential thinking." Compare AR 310, 299. Thus, the same answer states both that Plaintiff has "good concentration" and "poor concentration."

The opinions in the February MDQ Form express stronger functional impairments compared to those in the January MDQ Form. For example, the January MDQ Form says, "general attitude pleasant, therapeutically resistant, emotionally labile at times, motor activity normal," but the February MDQ Form adds to that response, "Pt can be erratic, combative toward staff, emotionally inconsistent. Difficulty with focus, difficulty completing tasks." Id. The February MDQ Form also adds that Plaintiff "has difficulty with self-care" and inconsistent hygiene. Compare AR 311, 300. The February MDQ Form adds that Plaintiff suffers from "extensive confusion – inability to maintain business; cognitive

14

disorganization." Id. Thus, the ALJ did not err in finding that these two forms, completed only one month apart, "differed substantially." AR 28.

Plaintiff suggests that the ALJ wrongfully analyzed the differences between the two forms because the January MDQ Form was merely a "draft" of the February MDQ Form, and that one cannot conclude otherwise unless one is a "handwriting expert." JS at 14. One does not need to be a handwriting expert to see that portions of the later form were photocopied from the earlier one or to see that they bear a different last date of evaluation.

The ALJ also referenced Dr. Burrell's progress notes from February 2013 to May 2013. AR 28, citing AR 347-56. Highlights from those notes are as follows:

- 02/11/13: Plaintiff "reported that she is in a play." AR 356.
- 02/13/13: Plaintiff "believes she may go with Oliver Stone to Sonoma." AR 355.
- 02/18/13: Plaintiff "presented as depressed and crying; described 'episode' on Wednesday; obtained invitation to meet with famous director – 'crashed.'" AR 354.
- 02/20/13: "taking course with Oliver Stone for film school." AR 353.
- 02/25/13: "Pt reported that her mood is improved over the past week. Pt reports being more functional." AR 352.
- 03/05/13: Plaintiff described as "tearful," "paranoid," and "hypersensitive." AR 351.
- 03/21/13: "meds well tolerated; confident that changes with meds are working." AR 350.
- 05/02/13: "good cooperation." AR 349.
- 05/13/13: "she is aggravated and angry." AR 348.
- 05/16/13: "no anger last 2 days; no aggression; sleep better." AR 347.

The ALJ correctly found that these notes "do not show a sharp decline in mental functioning," even though Dr. Burrell's MDQ Forms indicate Plaintiff had

15

more mental limitations in February 2013 compared to January 2013. Taking a film school course and acting in a play are inconsistent with Dr. Burrell's MDQ Form responses indicating that Plaintiff suffers from extensive confusion and cognitive disorganization. Dr. Burrell's own opinion that Plaintiff is competent to manage her own funds (AR 302) is similarly inconsistent. For all these reasons, the ALJ's finding that Dr. Burrell's opinions are internally inconsistent is supported by substantial evidence. This was a specific and legitimate reason to discount the opinions of Dr. Burrell.

      b.     Dr. Arella.

Regarding internal inconsistency in Dr. Arella's records, the ALJ found as follows:

> Importantly, Dr. Arella's own notes do not support his April 2014 opinion. In October 2013, Dr. Arella stated that the claimant had no issues. (Ex. 7F/3 [AR 359]). In November 2013, Dr. Arella stated that the claimant's racing thoughts were gone. (Ex. 7F/2 [AR 358]). Dr. Arella stated that the claimant had more steady energy. (Id.) In December 2013, Dr. Arella stated that the claimant was stable on medications. (Ex. 7F/1 [AR 357]). Dr. Arella stated that the claimant had no anger problems and was balanced. (Id.) Dr. Arella further stated that the claimant's brain function and sleep were better. (Id.) In January 2014, Dr. Arella stated that the claimant became better and had no anger. (Ex. 9F/2 [AR 370]). Dr. Arella stated that the claimant had a good day and was stable. In April 2014, Dr. Arella, in a psychiatry progress note, stated that the claimant had <u>done very well</u> (Ex. 9F/2 [AR 370]) (emphasis added).

AR 28.

Plaintiff first argues that being occasionally "stable" and "symptom-free" is "not inconsistent with disability." JS at 15. Plaintiff misses the inconsistency

identified by the ALJ, which is between Dr. Arella's EMD Form dated April 9, 2014, and Dr. Arella's treating notes from early 2014, summarized by the ALJ above. Dr. Arella's reporting that Plaintiff was occasionally symptom-free during these months *is* inconsistent with Dr. Arella opining in April 2014 that Plaintiff has "marked" limitations in all major functional areas, suffered multiple episodes of decompensation, and is incapable of functioning outside a highly supportive living arrangement.

Plaintiff also argues that the ALJ "isolated portions" of Dr. Arella's treating records rather than considering their full content. JS at 15. Plaintiff, however, fails to identify any comments from Dr. Arella's treating records ignored by the ALJ and explain why those comments are material. Id.

A comprehensive, chronological review of Dr. Arella's records shows that Plaintiff made steady improvement between 2013 and 2014 with adjustments to her medications. Dr. Arella began treating Plaintiff in April 2013, at which time he described her as "hysterical, manic, crying." AR 365. In June, he described her as "very depressed/unhappy" with "racing thoughts." AR 362. After Dr. Arella adjusted Plaintiff's medications, however, she reported no problems sleeping, no anger in September 2013, and Dr. Arella described her as cooperative. AR 360. By October, he described her as having "no issues." AR 28, citing AR 359. In November, Plaintiff told Dr. Arella that her racing thoughts were gone, and that she had more steady energy. AR 28, citing AR 358. In December, Dr. Arella considered Plaintiff to be stable on her medications, with no anger problems, balanced brain function and improved sleep. AR 28, citing AR 357. In January 2014, Dr. Arella reported that Plaintiff was "better" with no anger. AR 28, citing AR 371. In February, he noted that "she has done very well" and had a "good stable day." AR 28, citing AR 370. In April 2014, the same month that he completed the EMD Form, Dr. Arella wrote that Plaintiff "has done very well." AR 28, citing AR 395. Thus, the ALJ did not err in summarizing Dr. Arella's treatment

notes or in concluding that those treatment notes undermined his EMD Form opinions.

### 5. <u>**Reason Five: Inconsistency with Conservative Treatment Plan.**</u>

Where a treating physician recommends a course of treatment inconsistent with his/her opinion of total disability, an ALJ may rely on that inconsistency to discount the physician's opinion. See Rollins, 261 F.3d at 856 ("These are not the sort of description and recommendations one would expect to accompany a finding that [the claimant] was totally disabled under the Act"). The issue is not merely whether the claimant's treatment was conservative or aggressive; the issue is whether the recommended level of treatment is consistent with the level of impairment found by the treating doctor.

The ALJ summarized Plaintiff's treatment records for her psychological impairments as follows:

> [T]he claimant has had only routine treatment. The claimant met with a psychiatrist, Dr. Arella, and about five weeks before the hearing, started seeing a psychologist, Dr. Papillon. The claimant was prescribed medications, and therapy was rendered. There is no evidence that the claimant required psychiatric hospitalization. In fact, the claimant testified that she was helped by her treatment (medications and therapy). … Elsewhere, the claimant reported improvement with prescribed medications, which were well tolerated.

AR 25.

Plaintiff argues that her treatment was not conservative because she was prescribed Lithium, Seroquel, and Zyprexa. JS at 13. Citing AR 203 (listing medications as Lexapro, Lorazepam, and Seroquel), 290 (listing medications as Seroquel and Lexapro). Plaintiff assumes "the ALJ meant that [Plaintiff] needed to be hospitalized in ordered to be considered not conservative treatment" and then argues against that assumption. JS at 13.

18

The ALJ did not mean that every treatment for mental illness short of hospitalization is too conservative to support a finding of disability. Rather, the ALJ was pointing out that failure to recommend psychiatric hospitalization is inconsistent with the extreme opinions of Dr. Arella (e.g., that that Plaintiff has "marked" limitations in all major functional areas, suffered multiple, recent episodes of decompensation, and is incapable of functioning outside a highly supportive living arrangement [AR 375-76]) and Dr. Burrell (e.g., that Plaintiff "has repeated episodes of depression and PTSD that render her unable to function in her day-to-day life," has difficulties with basic self-care, and is delusional [AR 298-300]).

Thus, even without characterizing a course of treatment involving prescriptions for Lexapro, Lorazepam, and Seroquel as "conservative," the ALJ did not err in finding an inconsistency between Plaintiff's course of treatment and the MDQ and EMD Form opinions of her treating doctors. Thus, the ALJ's fifth reason for discounting Drs. Burrell and Arella's opinions is supported by substantial evidence.

## V.
## CONCLUSION

For the reasons stated above, IT IS ORDERED that judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

DATED: November 17, 2017

_____
KAREN E. SCOTT
United States Magistrate Judge